114 592
s116 426

(38 South. 464.)

No. 15,425.

LOUISIANA SOCIETY FOR PREVENTION OF CRUELTY TO CHILDREN v. TYLER.

(April 10, 1905.)

PARENT AND CHILD—CUSTODY OF CHILD—ORPHANS' HOME—AUTHORITY AND POWERS.

1. Relator here, plaintiff in another suit, authorized by Act No. 79, p. 91, of 1894, obtained a judgment removing the parent from the custody of her children and placing them in its custody.

2. In 1902 relator's agent called on respondent for the return to its custody of one of the children placed in respondent's charge by relator, in order, the relator averred, to place the child elsewhere.

3. Respondent claimed that it had the custody and control of the child; that she was amply provided with all she needed; that she was received at the orphans' home with the distinct understanding that she was to remain as long as she desired to remain; that relator has no power to control the child.

4. Relator, on the other hand, points to the statute conferring upon it authority in the premises, and claims that through its agency the child was placed temporarily at the orphans' home, and through the same agency the society wishes to have her returned to be placed elsewhere.

5. It is deemed advisable to remand the case for further testimony, and to let all questions involved regarding the child be considered.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George Henry Théard, Judge.

Habeas corpus by the Louisiana Society for the Prevention of Cruelty to Children against S. J. Tyler. Judgment for defendant, and plaintiff appeals. Reversed.

James J. McLoughlin and William J. Waguespack, for appellant. Rice & Montgomery and William Stirling Parkerson, for appellee.

BREAUX, C. J. The purpose of this suit is to inquire into the legal status of the minor child Claudie B. Johnson, who is in charge of the Protestant Orphans' Home in this city, in which orphans in need are taken care of and properly reared.

The Louisiana Society for the Prevention of Cruelty to Children is authorized to take children into their custody and care, and in that connection is rendering valuable and highly useful services.

Hereafter, for brevity's sake, we will curtail the titles of these two institutions to "Orphans' Home" and the "Society."

We are informed by the record that on the 3d of May, 1902, in case of State ex rel. La. Society for the Prevention of Cruelty to Children v. Sarah A. Johnson, in the Third District Court for the parish of Claiborne, the society, acting under Act No. 79, p. 91, of 1894, applied for and obtained a judgment placing this minor in its custody, and on the same day the society placed her in charge of the orphans' home.

The contention on the part of the society is that the child was placed temporarily at the orphans' home until the society, through its legal representative, could provide for her a permanent home. And, further, that the society finds it convenient at this time to place the child elsewhere, and that in furtherance of the wishes of the members of the society their representatives called upon the president of the orphans' home to return the child; that the orphans' home declined to comply with the demand for the child.

The president, acting for the orphans' home, informed the representative of the society that it was her intention to retain the permanent control of the minor child.

The petition for the habeas corpus contains the usual allegations (doubtless only made because it is the usual form), viz., that the child is in possession of the orphans' home, and that she is deprived of her liberty. The purpose, we take it, is to have a question of law settled, and to have it determined by whom the poor child shall be taken care of and reared to useful womanhood.

In justice we will state that in our view all was done by the society and the orphans' home needful to the protection and care of the child to the date that relator called for the child, and since also, as to that matter.

With reference to the law of the case and the legal steps heretofore taken, we turn to Act No. 79, p. 91, of 1894, and find that the society is authorized to bring suit in the name of the state.

Further, that the judge having jurisdiction is authorized on its petition for cause to remove children from the custody of parents or guardians, and provide them "with a home or such place for safe-keeping" most available and most suitable.

The defendant the president of the orphans' home answered at length, setting up that the orphans' home was incorporated in the year 1853 for the support and education of orphan children of both sexes, and that the average number annually taken care of is about 100; that one of the purposes of the institution is in time to find suitable homes for these children, where they shall be cared for, reared to industrious habits and under religious influences, and prepared to become good members of society.

We are informed that the members of the board freely devote their time to promote the welfare of the orphans' home without expectation of reward; only as a matter of duty.

Respondent avers that no conditions were imposed by the society when the child was placed in their charge; that she was furnished with clothing and food; that she and their other children are happy and contented, and do not wish to be removed. Relator, we infer from averments, has placed other children in defendant's charge, for it is alleged by defendant and it is not controverted by plaintiff "that at no time since the children,

or any of them, were placed in said institution, has the remotest interest been taken in them by the society, except to demand the surrender of some of them."

One of the members of the board of directors of the society testified that the child was placed at the orphans' home in accordance with instruction of the society, and that there is an agreement made by the society with all the asylums in the city of New Orleans to take care of children placed in their charge until the society would find homes for them.

Our learned Brother of the district court in a carefully written opinion arrived at the conclusion on respondent's objection, and in passing upon the question it raised, that relator has no cause of action. and dismissed relator's application.

No decision having been rendered on the merits, the questions now involved are before us at a preliminary stage of the proceedings.

Unquestionably, the society, after the judgment of the court for Claiborne parish had been rendered, was entitled to the custody of the young girl. That was the legal effect of the judgment. It so directed in terms clearly expressed that "Jewell, Claudie B., and William B. Johnson, minors, be and they are ordered removed from the custody of their mother, and are ordered delivered and placed in the care and under the control of the Louisiana Society for the Prevention of Cruelty to Children."

Nothing is said of the two other minors named in the judgment. We easily infer that they are properly and amply taken care of, wherever they are. Claudie alone is concerned—her care, maintenance, and education. There are features of the case of moment especially to the child. The questions involved will present themselves more completely after the testimony will have been heard.

While we have no hesitation in now deciding that primarily the society was entitled to the custody of this young girl, it may be, after having heard all the testimony admissible on the merits, that a different conclusion will be arrived at.

On the merits it will be determined whether the society has the right to the custody of the child to the extent it claims or not.

We have noted that witnesses have been heard, and it was after having heard them that the court decided upon the action taken. This testimony was directed to questions relating particularly to the cause of action.

On an application for habeas corpus all reasons for the custody of the person alleged to be held in custody without authority should be inquired into (Code Prac. art. 791); particularly the agreement before mentioned—the full extent of the authority of each of the parties.

Considering the case as a whole, we think that it should be tried on the merits.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is avoided, annulled, and reversed.

It is further ordered, adjudged, and decreed that this case be remanded to the district court to be tried on the merits.